904 F.Supp. 993 (1995)
ANGELICA CORPORATION, Plaintiff,
v.
GALLERY MANUFACTURING CORPORATION, d/b/a Gallery Industries, Defendant.
No. 4:95CV01656.
United States District Court, E.D. Missouri, Eastern Division.
November 16, 1995.
*994 Conny D. Beatty, Thompson and Mitchell, St. Louis, MO, Walter W. Timm, Chesterfield, MO, for plaintiff.
Jay A. Summerville, Armstrong and Teasdale, St. Louis, MO, for defendant.

ORDER
GUNN, District Judge.
This matter is before the Court on defendant's Motion to Dismiss.
Plaintiff Angelica Corporation ("Angelica") filed suit in state court on July 31, 1995. On August 31, 1995 defendant Gallery Manufacturing Corporation ("Gallery") removed the case to federal court pursuant to 28 U.S.C. § 1441(a). Defendant Gallery has filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Fed. R.Civ.P. 12(b)(2). Plaintiff Angelica opposes that motion.
The Complaint makes the following allegations. Angelica is a Missouri corporation and has its offices in Missouri. Gallery is a California corporation with its principal place of business in Florida. Angelica and Gallery are both garment manufacturers. The companies' representatives met at a 1993 trade show and again at a 1994 trade show. (Compl. at ¶ 6; Vallat Aff. at ¶ 3.) Gallery representatives then began calling Angelica representatives in Missouri to solicit business. (Compl. at ¶ 6; Vallat Aff. at ¶ 4.) After receiving calls from Gallery in late November and early December of 1994, Angelica became aware of an immediate need for 60,000 polo shirts to be made in four different styles: 43281; 43411; 992; and 209040. (Compl. at ¶ 6; Vallat Aff. at ¶ 5.) *995 Angelica contacted Gallery to inquire whether Gallery was capable of, and interested in, manufacturing the polo shirts if Angelica provided the fabric, labels and certain fittings. (Compl. at ¶ 7; Vallat Aff. at ¶ 6.) On February 16, 1995 Angelica shipped samples of each of the shirts to Gallery. (Compl. at ¶ 7; Vallat Aff. at ¶ 6.) Gallery later made a proposal to Angelica to manufacture the 43281 and the 42411 styles. (Compl. at ¶ 7; Vallat Aff. at ¶ 8.) Angelica accepted the proposal and thereby entered into a contract ("Contract One") with Gallery. (Compl. at ¶ 7; Vallat Aff. at ¶ 8.) Gallery made a separate proposal for manufacture of the 962 and 209040 styles and after some negotiation, the parties enter a second contract ("Contract Two") for the 962 and 209040 styles. (Compl. at ¶ 7; Vallat Aff. at ¶ 7.)
Angelica alleges that it paid for and sent to Gallery, the fabric, labels and certain fittings to be used by Gallery in the manufacturing process, along with measurement charts and swatches for the various sizes and styles of polo shirts. (Compl. at ¶ 8.) Gallery used the materials in its manufacturing process. Id. Gallery produced a sample of the embroidery to be used on the 43411 style shirt and sent it to Angelica in Missouri for approval. (Compl. at ¶ 9.) In a memorandum dated February 16, 1995 Gallery indicated that it had some confusion as to the collars of the polo shirts. Id. Angelica responded the same day by letter and by facsimile with a specific written description of collar width and with answers to Gallery's questions. Id.
On March 2, 1995 Gallery sent Angelica in Missouri a sample of the 43281 style polo shirt for Angelica's approval prior to going into full scale production. Id. Gallery did not send shirt samples for approval of the 43411, 962, and 209040 styles. Id. Angelica claims that some of the 962 and 209040 shirts were non-conforming. (Compl. at ¶ 11.) Angelica would not accept the deficient shirts and so it held up payments on Contract Two. (Compl. at ¶ 13.) Due to the problems with Contract Two, Angelica alleges that Gallery refused to send many of the acceptable shirts produced in accordance with Contract One even though Angelica had paid in full for the Contract One shirts. (Compl. at ¶¶ 14, 18.)
In Count I of the Complaint, Angelica alleges that Gallery breached both contracts. In Counts II and III, Angelica alleges that Gallery breached the implied and express warranties made in connection with Contract Two. Counts IV and V state claims for breach of duty of good faith and fair dealing and conversion respectively for conduct relating to both contracts. In Count VI, Angelica alleges that Gallery was negligent regarding Contract Two.
Gallery agrees that its representatives met Angelica representatives at trade shows, not held in Missouri, in 1993 and 1994. (Alexander Aff. at ¶ 4.) Gallery admits that it communicated with Angelica representatives in Missouri by telephone and by facsimile after Angelica called it about manufacturing the polo shirts. (Alexander Aff. at ¶¶ 4-8.) Gallery acknowledges that it entered into Contracts One and Two with Angelica and that it sent some sample shirts to Angelica in Missouri. (Alexander Aff. at ¶¶ 6-9.) Gallery contends that these contacts do not satisfy the minimum contacts requirement of the due process clause.
Gallery emphasizes that the contracts at issue in this case were not made in Missouri; that the contracts were not performed in Missouri; that no Gallery employee has ever set foot in Missouri; and that the contracts called for the delivery of the goods to Angelica's receiving facility in Tennessee, not Missouri. (Alexander Aff. at ¶¶ 19, 21.) Gallery explains that it has no bank accounts in Missouri; that it owns no real or personal property in Missouri; that it has no factory, office, store, or agents in Missouri; and that it is not registered to do business in Missouri. (Alexander Aff. at ¶¶ 12-18, 21.)
Angelica has provided the Court with the affidavit of Richard Vallat, an industrial engineer employed by Angelica. According to Vallat, he was contacted twice by a Gallery representative, Robert Alexander, soliciting business after the representatives met at a 1994 trade show. (Vallat Aff. at ¶¶ 3, 4.) Angelica characterizes its call to Gallery to inquire about the polo shirts as resulting from Gallery's two prior solicitation calls. Gallery argues that the contract negotiations in this case arose out of company representatives *996 meeting at the trade shows held outside of Missouri and out of Angelica's subsequent call to Gallery.
The parties also disagree about which side made the final acceptance in contract negotiations. Vallat states that the contracts arose in separate phone conversations when he accepted Gallery's proposals made through Robert Alexander. (Vallat Aff. at ¶¶ 7-8.) Alexander, President of Gallery, states in an affidavit submitted by defendant, that it was Gallery who accepted Angelica's offers. (Alexander Aff. at ¶ 8.)
For the purposes of this motion to dismiss, the Court need not resolve factual disputes. The nonmoving party bears the burden of showing that the court has personal jurisdiction over the defendant. Dakota Indus. v. Dakota Sportswear, 946 F.2d 1384, 1387 (8th Cir.1991) (citation omitted). However, jurisdiction need not proved by a preponderance of the evidence until trial; plaintiff need only make a prima facie showing of jurisdiction to survive a motion of dismiss. Id. (citations omitted). See also Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir.1994). "While the facts are viewed in the light most favorable to the plaintiff, `there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist.'" BIB Manufacturing v. Dover Manufacturing, 804 F.Supp. 1129, 1132, (E.D.Mo.1992), quoting Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977).
In this case Angelica has provided the Court with an affidavit verifying Angelica's position with regard to the jurisdictional facts. Therefore, for the purposes of this motion, the Court will assume that Gallery has had the following contacts with the forum: (1) Gallery contacted a Missouri resident on two occasions by phone for the purpose of soliciting business; (2) Gallery communicated with the Missouri resident by telephone and facsimile for the purpose of entering into two contracts; (3) Gallery entered into two contracts with that Missouri resident in Missouri;[1] and (4) Gallery shipped samples of goods to Missouri.
Whether a federal court sitting in diversity has jurisdiction over a non-resident requires a two-step inquiry. The Court must determine whether defendant committed one of the acts enumerated in the state long-arm statute and whether the exercise of personal jurisdiction over defendant comports with the Due Process Clause of the Fourteenth Amendment. BIB Mfg. Co. v. Dover Mfg. Co., 804 F.Supp. 1129, 1132 (E.D.Mo.1992) (citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338 (8th Cir. 1983)).
Missouri's long arm statute, Mo.Rev.Stat. § 506.500 (Vernon 1952 & Supp.1994), authorizes jurisdiction over nonresidents "`to the extent permissible under the due process clause.'" Piper v. Kassel, 817 F.Supp. 802, 804 (E.D.Mo.1993), citing Federal Deposit Ins. Corp. v. Malmo, 939 F.2d 535, 537 (8th Cir.1991). Consequently, our inquiry can be limited to whether exercising personal jurisdiction over defendant Gallery is consistent with due process. Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir.1992) (citation omitted). See also Minnesota Mining & Mfg. v. Nippon Carbide Indus., 63 F.3d 694, 697 (8th Cir.1995).
Due process requires sufficient minimum contacts between the nonresident defendant and the forum state such that the exercise of personal jurisdiction over the nonresident defendant is consistent with traditional notions of fair play and substantial justice. Id. (citations omitted). In assessing the sufficiency of the contacts, federal courts should focus on the relationship among the defendant, the forum, and the litigation. Id., citing Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579-80, 53 L.Ed.2d 683 (1977). Courts should consider three primary factors: "(1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; and (3) the relation of the cause of action to the contacts." Minnesota Mining, 63 F.3d at 697. *997 See also Wessels, Arnold & Henderson v. National Medical Waste, 65 F.3d 1427, 1432 (8th Cir.1995). Two secondary factors should also be weighed: the interest of the forum state in the litigation and the convenience or inconvenience to the parties. Minnesota Mining, 63 F.3d at 697.
In this case, while the quantity of contacts is not great, the nature and quality of defendant's contacts with Missouri are substantial enough such that asserting personal jurisdiction over Gallery comports with the dictates of due process. Gallery "purposely availed" itself of the privilege of conducting activity within Missouri. Bell Paper Box, Inc. v. Trans Western Polymers, 53 F.3d 920, 922 (8th Cir.1995) (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)). Gallery's contacts with Missouri were not "`random,'" "`fortuitous'" or "`attenuated.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)). Its contacts were also not the result of unilateral activity on the part of Angelica. Burger King, 471 U.S. at 475, 105 S.Ct. at 2183-84.
It is true that the mere making of a contract with a resident is not enough to confer jurisdiction. Minnesota Mining, 63 F.3d at 698. It is also true that the mere use of interstate facilities, such as telephones, mail or facsimile machines, is not enough to confer jurisdiction. Bell Paper Box, 53 F.3d at 923. However, in this case, neither of those contacts stands on its own. Gallery "`purposefully directed'" its activities at a Missouri resident when it made solicitation calls; when it actively pursued contracts with plaintiff's representatives located in Angelica's main office in Missouri; when it entered into a contract with a Missouri resident in Missouri; when it sent samples to Angelica in Missouri; and when it carried on an active correspondence with Angelica in Missouri via the telephone, fax, and mail. Id. at 472, 105 S.Ct. at 2181-82 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). Gallery spoke only with Angelica representatives in Missouri. This case does not present a situation where a defendant deals with a forum corporation solely through offices located outside the forum; in that situation the residency of the corporation is "random" and "fortuitous" to the extent that an exercise of personal jurisdiction by the forum over the defendant would be so unfair or unreasonable as to rise to the level of a constitutional violation. The Court notes that "`[j]urisdiction ... may not avoided merely because the defendant did not physically enter the forum state.'" Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d at 820 (quoting Burger King, 471 U.S. at 476, 105 S.Ct. at 2184.).
As for the third primary factor  the relation of the cause of action to the contacts, a court may exercise specific or general jurisdiction over a nonresident defendant. Wessels, 65 F.3d at 1432 n. 4; Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280-81 (8th Cir.1991). General jurisdiction exists when defendant's contacts with the forum are "continuous and systematic." Morris, 923 F.2d at 1281 (citation omitted). Thus, general jurisdiction may be proper despite the fact that the plaintiff's claims neither arise out of nor are related to defendant's contacts with the forum. Id. at 1280 (citation omitted). Specific jurisdiction exists when plaintiff's claims arise out of defendant's forum state activities and contacts. Id. In this case Angelica has clearly not alleged that the activities of Gallery within Missouri are sufficient to show the continuous and systematic contacts necessary for general jurisdiction. However, Angelica has made a prima facie showing that the causes of action in this case arise out of Gallery's contacts with the forum. In light of the substantial nature and quality of those contacts, the Court may exercise specific personal jurisdiction over Gallery.
As for the secondary factor of the forum's interest in the litigation, Missouri has an interest in providing a forum for its resident, Angelica. In considering the other secondary factor, the convenience of the parties, the Court recognizes that while Missouri is a convenient forum for the plaintiff, it is not so convenient for the Florida-based defendant. However, there is no showing that any inconvenience to the defendant outweighs the other *998 factors which cut in favor of specific personal jurisdiction in this case.
The Court finds that plaintiff has made a prima facie showing, based on an affidavit, that this Court has specific personal jurisdiction over defendant Gallery. Therefore, the Court will deny defendant's Motion to Dismiss. Accordingly,
IT IS HEREBY ORDERED that defendant's Motion to Dismiss (Doc. No. 6) is denied.
NOTES
[1] "A contract is made in Missouri if the final act which gives rise to a binding agreement occurs within this state." U.S. Durum Milling, Inc. v. Frescala Foods, Inc., 785 F.Supp. 1369, 1371-72 (E.D.Mo.1992) (citation omitted). In this case, the final act, acceptance, occurred in Missouri when Angelica accepted Gallery's offer on the phone.