# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2332

_____

|  |  |  |
|---|---|---|
| Vickie Miller, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Nippon Carbon Company, Ltd., | * | |
| | * | |
| Appellee, | * | |
| | * | |
| Mitsubishi Logistics Corporation; | * | |
| Intermodal Cartage Company, Inc., | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: February 15, 2008
Filed: June 18, 2008

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Vickie Miller (Miller), a resident of Arkansas, brought a wrongful death action on behalf of her deceased husband against Nippon Carbon Company, Ltd. (Nippon), a Japanese corporation. Finding no personal jurisdiction over Nippon, the district

court[1] dismissed Miller's lawsuit.  Miller appeals the district court's decision.  We affirm.

## I.    BACKGROUND

This wrongful death action arises out of a tragic incident involving Miller's husband, Larry Miller (Mr. Miller).  Mr. Miller was killed while attempting to unload a shipment of electrodes (heavy columns weighing approximately 4,800 pounds, used in the production of steel) at President's Island in Memphis, Tennessee.  At the time of the incident, the shipment was en route to Nucor Corporation (Nucor), an Arkansas corporation.  Nippon manufactured and sold the electrodes to Nucor.  The following are undisputed facts regarding the transaction:

1.    Nippon manufactured the electrodes at its plant in Toyama, Japan.

2.    Morohishi Freightage, Ltd. packed and loaded the electrodes into cargo containers in Japan for shipment to Nucor.

3.    Mitsubishi Logistics Corporation made all arrangements for transportation of the cargo containers to their ultimate destination in Arkansas.

4.    Yang Ming Marine Transport Corporation transported the cargo containers by ocean freighter to Long Beach, California, and then by rail to Memphis, Tennessee.

5.    Global Material Services, LLC unloaded the cargo containers at President's Island, Tennessee, in preparation for the ultimate delivery by truck to Nucor in Arkansas.

6.    Mr. Miller worked for Global Material Services.

Miller initially sued four Japanese companies in a Tennessee federal district court: Nippon (the manufacturer of the electrodes), Morohishi Freightage (the

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

company Nippon hired to package and load the electrodes into cargo containers), Yang Ming Marine (the carrier that shipped the cargo container to Tennessee), and Mitsubishi Logistics (the company that arranged delivery of the electrodes to their ultimate destination in Arkansas). The Tennessee district court dismissed the action for lack of personal jurisdiction. The Tennessee district court also denied Miller's motion to transfer the action to Arkansas under 28 U.S.C. § 1404(a), which permits the transfer of an action to any other district where the action might have been brought.

Miller also filed suit in the Eastern District of Arkansas against Nippon. Nippon moved to dismiss for lack of personal jurisdiction. Concluding there were insufficient minimum contacts between Nippon and Arkansas, the district court granted Nippon's motion to dismiss. The district court found, among other things, Nippon never registered to do business in Arkansas and did not maintain a registered agent, bank account, office, or manufacturing plant in Arkansas, nor did Nippon advertise in the state of Arkansas. The district court did find Nippon sent two representatives to Nucor in Arkansas once or twice a year since 2003, but concluded Mr. Miller's death did not arise from Nippon's contacts with Arkansas. The district court first noted Miller did not argue general personal jurisdiction over Nippon and then decided Miller's claim that Arkansas had specific personal jurisdiction over Nippon did not comport with due process. Miller appeals.

## II.    DISCUSSION

We review de novo a motion to dismiss for lack of personal jurisdiction, and the nonmoving party needs only make a prima facie showing of jurisdiction. See Dakota Indus., Inc. v. Dakota Sportswear Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). If jurisdiction has been controverted, the plaintiff has the burden of proving facts supporting personal jurisdiction. See Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). "The plaintiff's 'prima facie showing' must be tested, not by

the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." Id. (quotations and citations omitted).

A federal court may exercise jurisdiction "over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." Dakota Indus., Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994) (citation omitted). The Arkansas long-arm statute confers jurisdiction to the fullest extent permitted by the Due Process Clause. Dever, 380 F.3d at 1073. The Due Process Clause requires that "minimum contacts" exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

"Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (quoting Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991)). "In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 818-19; see Burger King Co. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). We have adopted "a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Id. at 819 (citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)). With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. Id. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a

defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" Id. (quoting Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir. 1993)).

Because Miller does not contend on appeal that the basis for personal jurisdiction is the "continuous and systematic" contacts with the forum state, i.e., general jurisdiction, Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006), we consider whether specific jurisdiction exists over the defendants. In doing so, "[a]t a minimum . . . we will consider . . . the nature and quality of the contacts, and [their] source and connection to the cause of action." Lakin v. Prudential Sec., Inc., 348 F.3d 704, 712 (8th Cir. 2003) (internal quotation marks omitted).

With respect to the nature and quality of the contacts with the forum state, Nippon's contacts with Arkansas are limited. Nippon is not licensed to do business in Arkansas and has no agents, offices, employees, or property in Arkansas. Nippon contends its contacts of selling electrodes to Nucor and sending two representatives to visit Nucor in Arkansas once or twice a year do not constitute contacts from which Miller's claims arise. Nippon states it was not involved in packaging, shipping, loading or unloading the electrodes, thus, it was not involved in the event that caused Mr. Miller's death. According to Nippon, the packaging, shipping, loading and unloading of the electrodes were performed by subcontractors. Nippon emphasizes that when Mr. Miller unloaded the electrodes, he was following orders from his employer, Global Material Services, not from Nippon. Therefore, Nippon asserts its contacts with Arkansas are not enough to establish that Miller's claims arise from those contacts.

To support its position, Nippon relies on Morris v. Barkbuster, Inc., 923 F.2d 1277 (8th Cir. 1991). In Barkbuster, F.W. and Associates, Inc. (FWA), an Ohio corporation with its principal place of business in Arizona, sold a log splitter under the

trade name Barkbuster to Diversified Distributing, Inc. (DDI), a Minnesota corporation. Id. at 1279. Pursuant to the contract for the sale of the Barkbuster product line, FWA shipped twenty-one truckloads of material, including some completed units, to DDI in Minnesota. Id. In addition, FWA sent five employees to Minnesota to assist DDI in conducting a physical inventory. Id. Owners of FWA also attended a dinner party in Minnesota relating to the sale of Barkbuster products. Id.

A few years after the sales transaction between FWA and DDI, David Morris (Morris), a citizen of Kentucky, lost both of his arms in an accident in Kentucky involving a Barkbuster log splitter distributed by DDI. Id. Morris filed suit for damages in Kentucky federal court, naming FWA as one of the defendants. Id. The Kentucky court concluded it lacked personal jurisdiction and granted FWA's motion to dismiss. Id. Morris then filed his action in the federal district court of Minnesota. Id. In his Minnesota action, Morris alleged FWA negligently designed the log splitter and failed to warn potential users of foreseeable dangers associated with its use. Id. The district court granted FWA's motion to dismiss for lack of personal jurisdiction. Id. In affirming the district court, we explained:

> Although FWA shipped parts to Minnesota pursuant [to] the sales contract and three times sent its employees there, these actions related to the implementation of the sales contract and the transition of ownership, *not to the design of the log splitters.*

Id. at 1281-82 (emphasis added).

Like Barkbuster, although Nippon sold electrodes to an Arkansas corporation pursuant to a sales contract, and Nippon's representatives visited Arkansas once or twice per year, these contacts do not sufficiently, for due process purposes, relate to the packing, shipping and unloading of the electrodes, the events which allegedly gave rise to Miller's cause of action, and do not permit the exercise of personal jurisdiction over Nippon in this case.

Miller alleges Nippon had the duty to ensure the safe packing of the electrodes, but this conclusory allegation is not enough to establish personal jurisdiction. Miller has the burden of proving facts supporting personal jurisdiction, "not by the pleadings alone, but by the affidavits and exhibits." Dever, 380 F.3d at 1072 (quotations and citations omitted). Nothing in this record shows Nippon bore this duty and could reasonably anticipate being haled into an Arkansas court to defend a dispute over how to pack, ship, load and unload the electrodes.

Furthermore, we note essentially all of the witnesses and documents concerning the packaging, shipping and unloading of the electrodes are primarily in Japan or otherwise outside Arkansas. Although Arkansas certainly has a legitimate interest in providing a forum for its residents, that interest does not overcome the substantial inconvenience for the parties to resolve Miller's allegations in Arkansas. The inconvenience to the parties and their witnesses, under the facts of this case, is a factor that militates against Miller for purposes of establishing personal jurisdiction over Nippon. See St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 591 (8th Cir. 2001) (stating, "[e]ven if the minimum contacts threshold is established, personal jurisdiction may be defeated if its exercise would be unreasonable considering such factors as [] the burden on the defendant.").

Applying our five-part test for measuring minimum contacts, see Bell Paper Box, Inc., 22 F.3d at 819, convinces us traditional notions of fair play and substantial justice do not afford an Arkansas court personal jurisdiction over non-resident Nippon for Miller's claims.

## III.   CONCLUSION

The district court properly granted Nippon's motion to dismiss for lack of personal jurisdiction. Miller's claims are dismissed without prejudice.

_____