**Moutoume DOULA, Daniel Mbanjock, and Josue Calvin Nguele, Plaintiffs,**

v.

**UNITED TECHNOLOGIES CORPORATION, a foreign corporation, Defendant.**

**Civ. No. 4–90–685.**

United States District Court,
D. Minnesota,
Fourth Division.

March 19, 1991.

David Ford Fitzgerald, Stephen P. Watters, Deborah C. Eckland, and Rider, Bennett, Egan & Arundel, Minneapolis, Minn., Russell Thomas Roe, Roe Law Office, Maple Plain, Minn., for plaintiffs.

Richard H. Kyle, Mark J. Ayotte, and Briggs and Morgan, St. Paul, Minn., and Francis H. Morrison III, Robert A. Brooks, and Day, Berry & Howard, City Place I, Hartford, Conn., for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion to dismiss on the following grounds:

1. Lack of personal jurisdiction;
2. Improper venue; and
3. Insufficient service of process.

In the alternative, defendant moves to transfer venue to the District of Connecticut pursuant to 28 U.S.C. § 1404(a).

Also before the court is plaintiffs' renewed motion to continue the March 1, 1991, hearing so that plaintiffs may conduct discovery on the issue of personal jurisdiction of the defendant in Minnesota.

## BACKGROUND

This dispute arises out of an accident occurring when a Cameroon Airlines aircraft exploded at an airport in the City of Doula, Cameroon. The plaintiffs, three individual residents of the Republic of Cameroon, allege that they were injured in the explosion and that the explosion was the result of the defective design, manufacture and assembly of the aircraft engine by Pratt & Whitney Aircraft, a division of United Technologies Corporation (Pratt & Whitney). United Technologies Corporation (UTC Delaware) is a Delaware corporation with its principal place of business in Hartford, Connecticut.

It is undisputed that the engine in this case was designed, manufactured, tested and sold by the Pratt & Whitney facilities in East Hartford and North Haven, Connecticut. It is also undisputed that four UTC employees in Minnesota serve as customer service representatives at the Minneapolis/St. Paul Airport. These employees work out of the Northwest Airlines terminal at the airport. It is further undisputed that according to UTC's 1989 annual report, Northwest Airlines in that year awarded Pratt & Whitney an order for jet engines in the amount of 1.5 billion dollars.[1]

---

1. Until recently, Northwest Airlines used Pratt & Whitney engines exclusively.

The defendant contends that neither UTC (Delaware) nor Pratt & Whitney is licensed or authorized to do business in Minnesota or maintains an agent for service of process in the state. It is undisputed, however, that CT Corporation System, Inc. ("CT Corporation") is the agent for service of process for a corporation entitled United Technologies Corporation, an Alabama corporation (UTC Alabama). It is also undisputed that UTC (Alabama) is a wholly owned subsidiary of UTC (Delaware). The defendant contends that UTC (Alabama) was set up to protect the name United Technologies in various states including Minnesota. UTC (Alabama) has also applied to transact business in Minnesota and its incorporation documents were prepared by counsel for UTC (Delaware) in Hartford, Connecticut.

The plaintiffs contend that other affiliates of UTC also do business in Minnesota, including the Carrier Corporation (which also uses CT Corporation as its corporate agent in the State of Minnesota), Otis Elevator Company (which also uses CT Corporation as its corporate agent in the State of Minnesota), Carrier Distribution Credit Corporation (which also uses CT Corporation as its corporate agent in the State of Minnesota). The SEC Form 10K filing by UTC describes all of these companies as either direct or indirect subsidiaries, units, or affiliates of UTC.

On October 5, 1990, the plaintiffs' summons and complaint were served on CT Corporation which plaintiffs contend is the Delaware corporation's registered agent for service of process in Minnesota. The defendant contends, however, that UTC (Delaware) does not maintain an agent for service of process in Minnesota and that CT Corporation is only the agent of service of process for UTC (Alabama).

The defendant now seeks to dismiss the lawsuit alleging:

1. There is no personal jurisdiction over UTC (Delaware) pursuant to Minnesota's long-arm statute because there is no nexus between plaintiffs' cause of action and any activity of UTC (Delaware) in the state.

2. Venue is improper because the plaintiffs are residents of the Republic of Cameroon, their claim arises out of an aircraft accident in the Republic of Cameroon, and Minnesota lacks personal jurisdiction over the defendant. In the alternative, defendant seeks transfer to the District of Connecticut pursuant to 28 U.S.C. § 1404(a).

3. Service was insufficient because the plaintiffs served CT Corporation, an agent for service of process of UTC (Alabama) not UTC (Delaware).

The plaintiffs contend, however, that service of process was not inadequate. The plaintiffs further contend that there is sufficient nexus between their cause of action and defendant's contacts with the State of Minnesota to satisfy Minnesota's long-arm statute. The plaintiffs also claim that the court has general jurisdiction over UTC (Delaware) based on its general and systematic business contacts with Minnesota. They further contend that UTC (Delaware) has consented to Minnesota's jurisdiction because UTC (Alabama) is its wholly owned subsidiary. UTC (Alabama) and at least four other affiliates or units of UTC (Delaware) have consented to service of process in Minnesota. Plaintiffs contend that venue in Minnesota is proper because jurisdiction exists and that the case should not be transferred to the District of Connecticut pursuant to 28 U.S.C. § 1404(a). Finally the plaintiffs argue that there are genuine issues of material fact regarding the existence of personal jurisdiction over UTC and requests further discovery to establish such jurisdiction.

## DISCUSSION

■ The party seeking federal jurisdiction has the burden of establishing that such jurisdiction exists; the burden may not be shifted to the party challenging that jurisdiction. *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir.1982) (citations omitted). For motions to dismiss for lack of personal jurisdiction or improper venue, "in which no evidentiary hearing is held, the plaintiff must present only a prima facie showing of venue and personal jurisdiction." *Delong*

*Equip. Co. v. Washington Mills Abrasive,* 840 F.2d 843, 845 (11th Cir.1988) (citations omitted). Moreover, "all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (citations omitted). With this standard at hand, the court will consider defendant's motions to dismiss for lack of personal jurisdiction and improper venue.

1. *UTC's Motion to Dismiss for Lack of Personal Jurisdiction*

In order to comply with due process and to establish personal jurisdiction over the defendant in Minnesota, the plaintiffs may show any of the following:

(1) UTC (Delaware) has business in the State of Minnesota which is so pervasive that UTC has subjected itself to the state's general jurisdiction;

(2) UTC (Delaware) has sufficient minimum contacts with the State of Minnesota to comply with the state long-arm statute for the purposes of specific jurisdiction; or

(3) UTC (Delaware) has consented to Minnesota's exercise of jurisdiction over it.

*Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1198–1200 (8th Cir.1990); *see also Morris v. Barkbuster, Inc.,* 923 F.2d 1277 (8th Cir.1991); *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965). The plaintiffs contend that there is jurisdiction over UTC (Delaware) under all three methods. Each basis for jurisdiction will be examined in turn to determine if jurisdiction over UTC (Delaware) exists.

■ The plaintiffs first contend that general jurisdiction exists over UTC (Delaware). Under general jurisdiction the plaintiffs' claim need not arise directly out of the defendant's contacts with Minnesota, as long as the defendant has engaged in "continuous and systematic business contacts" with Minnesota. *Helicopteros Nacionales v. Hall,* 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984) (citing *Perkins v. Benguet Consol. Mining*

*Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 414–15, 96 L.Ed. 485 (1952) for the due process standard). The Minnesota Supreme Court has interpreted this standard to mean that "the foreign defendant's activities with respect to the forum state must be of such substance that it would not be unfair for defendant to be brought into the forum state's court for a cause of action unrelated to those activities." *Real Properties, Inc. v. Mission Ins. Co.,* 427 N.W.2d 665, 669 (Minn.1988). Further, the Eighth Circuit has explained that general jurisdiction arises "[i]f a defendant is 'present' in the State in the sense that, jurisdiction over it exists under the old rubric of physical power or sovereignty .... [and] [i]t exists as to all claims against the defendant, whether or not arising out of or related to activities within the State." *Knowlton,* 900 F.2d at 1199; *Morris,* 923 F.2d at 1280–81. Applying this standard, UTC's (Delaware) business in Minnesota is purposeful, continuous and systematic. The defendant derives substantial income from its business in Minnesota through its sale of jet engines. For example, in 1989 alone Pratt & Whitney received an order for 1.5 billion dollars worth of jet engines from Northwest Airlines. Moreover, Northwest Airlines has had an ongoing business relationship with the defendant and has historically used only Pratt & Whitney jet engines. Pratt & Whitney maintains at least four employees in Minnesota working in conjunction with Northwest Airlines as customer service representatives for Pratt & Whitney engines and airplanes which come through the Minneapolis/St. Paul Airport. These employees are in the State of Minnesota on a continuous, daily basis. Other UTC affiliates or units also conduct substantial business in Minnesota, including Carrier Corporation, Otis Elevator Company and Carrier Distribution Credit Corporation. *Cf. Waters v. Deutz Corp.,* 460 A.2d 1332, 1336–38 (Del.Super.Ct.1983) (permitting personal jurisdiction over foreign manufacturer based on commercial activities of subsidiary); *Perry v. American Motors Corp.,* 353 A.2d 589, 591–93 (Del.Super.Ct.1976) (counting activities in state of wholly owned subsidiary as contacts for purposes

of personal jurisdiction analysis). These contacts are sufficient to show that UTC (Delaware) conducts a purposeful, continuous and systemic business in Minnesota. Based on the foregoing, the defendant has established such pervasive and general business contacts that the exercise of general jurisdiction is appropriate.

■ The plaintiffs also contend that personal jurisdiction exists over UTC (Delaware) pursuant to Minnesota's long-arm statute. The statute provides:

Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a Court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation.... This Section applies if, in person or through an agent, the foreign corporation ...:

.    .    .    .    .

(b) Transactions any business within the state....

.    .    .    .    .

Subdivision 3. Only causes of action arising from acts enumerated in Subdivision 1 may be asserted against the defendant in an action in which jurisdiction over the defendant is based upon this section.

Minn.Stat. § 543.19. The plaintiffs contend that jurisdiction is proper because UTC (Delaware) has established the requisite contacts with the State of Minnesota because it transacts substantial business in the state. The plaintiffs further contend that nexus exists between their cause of action and UTC's (Delaware) activities in Minnesota. The plaintiffs' suit arises out of the malfunction of an airplane engine manufactured by Pratt & Whitney. The plaintiffs cite the following facts to establish nexus between their claim and UTC's (Delaware) contacts in Minnesota: Pratt & Whitney jet engines are constantly in use in Minnesota, those engines in use may include the exact model at issue, and Pratt & Whitney has at least four employees in Minnesota to service those engines. Plaintiffs argue that UTC (Delaware) should not be allowed to conduct substantial business in the State of Minnesota, take advantage of its laws and consumers, sell jet engines and various other products, and then hide behind its corporate units or affiliates to claim lack of personal jurisdiction in Minnesota. Although courts have stretched the nexus concept to its limits to find personal jurisdiction pursuant to the Minnesota long-arm statute, *see, e.g., Hoppe v. G.D. Searle & Co.,* 683 F.Supp. 1271, 1274–75 (D.Minn.1988) (holding that nexus requirement was satisfied for products liability claim involving non-resident plaintiff, non-resident defendant and injury occurring in New York because three Minnesota physicians had been involved in the defective product's clinical testing), plaintiffs do not allege any facts which establish nexus in the present case. Thus, there is no personal jurisdiction over UTC (Delaware) pursuant to the Minnesota long-arm statute because there is no nexus between the plaintiffs' cause of action and UTC's (Delaware) activity within the state. *Hoppe,* 683 F.Supp. at 1274.

■ The defendant contends that the Minnesota long-arm statute also requires nexus between the defendant's contacts with Minnesota and the cause of action before the exercise of any jurisdiction, including general jurisdiction, is proper. The Minnesota Supreme Court, however, has permitted suits on transitory causes of action, such as those for personal injury, regardless of where the cause of action arose as long as the defendant is either present in the state or has consented to its jurisdiction and has also been served in accordance with law. *Knowlton,* 900 F.2d at 1200 (relying on *Erving v. Chicago & N.W. Ry. Co.,* 171 Minn. 87, 214 N.W. 12 (1927), which permitted a tort action by a non-resident plaintiff against a non-resident railroad company for an accident occurring outside of Minnesota, relying on the statutory predecessor of Minn.Stat. § 303.13)); *see also Rykoff–Sexton, Inc. v. American Appraisal Assocs.,* 460 N.W.2d 78, 80–81 (Minn.Ct.App.1990) (discussing various Minnesota cases involving transitory causes of action where the location of the events giving rise to the lawsuits were either fortuitous or unknown and the

Minnesota courts extended personal jurisdiction to its constitutional limits). Various cases suggest, however, that there is an apparent conflict between the restrictive nexus requirement in the Minnesota long-arm statute and the broader reach of personal jurisdiction allowed under due process, and that this conflict remains an unresolved question of state law. *See, e.g., Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1274 (D.Minn.1988); *Rykoff–Sexton*, 460 N.W.2d at 80. Recent Minnesota cases also have held that nexus is a prerequisite in contract causes of action. *See, e.g., Rykoff–Sexton*, 460 N.W.2d at 82; *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 489 (Minn.Ct.App.1990). Other cases, however, acknowledge the existence of general jurisdiction in transitory causes of action. *See, e.g., Real Properties*, 427 N.W.2d at 669; *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 298, 240 N.W.2d 814, 819 (1976) (holding that "where contacts are substantial with respect to both quantity and quality, it is not essential to find that they are also related to the cause of action"); *Morris*, 923 F.2d at 1280–81; *Knowlton*, 900 F.2d at 1199; *see also Northwestern Nat'l Bank v. Kratt*, 303 Minn. 256, 260–61, 226 N.W.2d 910, 913–14 (Minn.1975) (construing the nexus requirement of the Minnesota long-arm statute broadly to permit exercise of personal jurisdiction over a defendant who had established sufficient contacts to satisfy minimum due process standards). Based on the Minnesota Supreme Court's recent acknowledgement that general jurisdiction does exist in Minnesota, *Real Properties*, 427 N.W.2d at 669, and the determination that the defendant has established sufficient contacts to satisfy the standards for general jurisdiction, the court rejects the defendant's contention that nexus is always a prerequisite to the exercise of jurisdiction in Minnesota. *See also Erving v. Chicago & N.W. Ry. Co.*, 171 Minn. 87, 214 N.W. 12 (1927) (permitting jurisdiction without nexus).

■ The plaintiffs also contend that Minnesota may exercise jurisdiction over UTC (Delaware) because the Delaware corporation, through its Alabama subsidiary, consented to the exercise of jurisdiction by setting up the Alabama subsidiary, registering the Alabama subsidiary as a foreign corporation doing business in Minnesota and appointing CT Corporation as a registered agent for the Alabama subsidiary in Minnesota. Designating an agent to receive service is equivalent to consenting to jurisdiction. *Knowlton*, 900 F.2d at 1199. "The whole purpose of requiring designation of an agent for service is to make a non-resident suable in the local courts. The effect of such a designation can be limited to claims arising out of in-state activities and some statutes are so limited, but the Minnesota law contains no such limitation." *Id.* (construing Minn.Stat. § 303.13, subd. 1(1)). Moreover, appointing an agent for service of process "gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state. Such consent is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary." *Id.* at 1200 (citation omitted). Plaintiffs further argue that the State of Minnesota requires a designation of an agent for service to make non-resident corporations subject to suit in Minnesota. The plaintiffs contend that UTC, because of its employees in Minnesota and its history of selling jet engines in Minnesota, is required to be licensed and have an agent in the state. The plaintiffs further contend that UTC (Delaware) holds itself out as being registered in Minnesota, with a registered agent, by registering an entity with its exact name. Thus, plaintiffs contend that UTC, through the Alabama subsidiary and its other affiliates, consented to the exercise of jurisdiction in this state. Because the court will exercise general jurisdiction over UTC (Delaware), the issue of whether or not UTC (Delaware) consented to jurisdiction need not be determined.

## 2. *Defendant's Claim that Service of Process Was Insufficient*

■ The defendant also seeks to dismiss the plaintiffs' action alleging insufficient

service. Federal Rule of Civil Procedure 4(d)(3) provides:

(d) Summons and Complaint: Person to be served.

.    .    .    .    .

(3) Upon a domestic or foreign corporation ... by delivering a copy of the Summons and of the Complaint to ... any other agent authorized by appointment or by law ... to receive service of process....

Federal Rule 4(e) goes on to provide for service in accordance with the applicable state statute or rule.

■ Minnesota law provides that service shall be made as follows:

Upon a corporation. Upon a domestic or foreign corporation by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons....

Minn.R.Civ.P. 4.03(c). To be an agent for purposes of receiving service of process under Minnesota law there must exist an agency relationship that cannot be created by estoppel or implication of law, but may be implied from the facts presented. *Winkel v. Eden Rehabilitation Treatment Facility, Inc.,* 433 N.W.2d 135, 139 (Minn. Ct.App.1988) (citation omitted). In determining the existence of an implied agency relationship the Minnesota Supreme Court examines whether an agent's "authority to accept service can reasonably and fairly be implied from the kind and character of the agency relationship which the record shows existed." *Derrick v. The Drolson Co.,* 244 Minn. 144, 154, 69 N.W.2d 124, 131 (Minn. 1955) (relying on *Connecticut Mut. Ins. Co. v. Spratley,* 172 U.S. 602, 617, 19 S.Ct. 308, 514, 43 L.Ed. 569 (1899)). The plaintiffs argue that UTC (Delaware) gave CT Corporation implied authority to act on its behalf by creating UTC (Alabama), by using UTC (Alabama) to preserve the United Technologies name in Minnesota and by using UTC (Alabama) as an entity to receive service of process through CT Corporation. UTC (Delaware) admits that UTC (Alabama) is a wholly owned subsidiary of UTC (Delaware). The plaintiffs further note that UTC, through the Alabama subsidiary, filed with the Minnesota Secretary of State a certificate of incorporation and also annual reports for the years 1988, 1989 and 1990.

The plaintiffs contend that it is misleading for UTC (Delaware) to deny that CT Corporation is its resident agent because the same name, United Technologies, is used by both the Alabama and Delaware corporations.[2] The plaintiffs argue that UTC's act of registering an entity with the identical name is sufficient authorization to imply an agency relationship pursuant to Rule 4.03(c) of the Minnesota Rules of Civil Procedure.

The plaintiffs further bolster their implied agency argument by noting that CT Corporation acted like an agent of UTC (Delaware) by mailing the summons directly to the Delaware corporation. It is undisputed that the Pratt & Whitney legal department had the summons and complaint as early as October 11, 1990, six days after the sheriff's service on CT Corporation. In a similar situation the court in *Erickson v. Coast Catamaran Corp.,* 414 N.W.2d 180, 183 (Minn.1987), stated that:

The primary concern with allowing an agent to receive service for the corporation has generally been to protect a defendant from any prejudice which could result from a lack of notice.

*Id.* at 183 (citation omitted). UTC (Delaware) clearly received prompt and actual notice of the lawsuit and thus has suffered no prejudice due to lack of notice. Based on the foregoing, the facts are sufficient to demonstrate that CT Corporation was an implied agent of UTC (Delaware) and thus service was proper under Minnesota law.[3]

---

**2.** The resulting confusion is demonstrated by the fact that the certificate of service notes only that United Technologies Corporation was the party served on October 5, 1990, without indicating whether it was UTC (Delaware) or UTC (Alabama) that was actually served.

**3.** Plaintiffs further argue that they did not know that service was improper until defendant brought this motion to dismiss and that their lack of knowledge provides an additional basis to preclude UTC (Delaware) from disclaiming an agency relationship with CT Corporation.

**1384**

### 3. Defendant's Motion to Dismiss on the Basis of Improper Venue

 UTC contends that venue in the Federal District of Minnesota is improper because Minnesota lacks personal jurisdiction over UTC (Delaware). For the reasons discussed above, Minnesota has jurisdiction over UTC (Delaware) and thus venue is proper pursuant to 28 U.S.C. § 1391(a). Defendant's motion to dismiss on the basis of improper venue is therefore denied.

### 4. UTC's Motion to Transfer

 In the alternative, UTC moves to transfer venue to the District of Connecticut pursuant to 28 U.S.C. § 1404(a). Section 1404(a) of Title 28 of the United States Code states that:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Analyzing the first factor of § 1404(a), the convenience of parties, suggests that Connecticut is a more appropriate forum. The plaintiffs are residents of the Republic of Cameroon and Connecticut is probably as convenient a forum for them as Minnesota. The defendant, however, has its principal place of business and its manufacturing facility in Connecticut. Thus this factor suggests that transfer to Connecticut is appropriate. Examining the second factor, the convenience of witnesses, also supports a transfer. Plaintiffs admit that they have no witnesses in Minnesota. The defendant, however, has numerous witnesses in Connecticut. This factor also supports transfer to Connecticut. Turning to the third factor, the interests of justice, plaintiffs contend that transfer to Connecticut will increase legal costs. The plaintiffs concede, however, that much of the discovery in Connecticut has already been conducted because of another case arising out of the same accident. The burden of the two parties pursuant to the third factor is relatively similar. The first two factors, however, strongly favor the defendant's motion to transfer. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). This balance of factors is strong enough to overcome the presumption in favor of plaintiffs' choice of forum, and thus defendant's motion to transfer pursuant to § 1404(a) is granted.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss for lack of personal jurisdiction is denied;

2. Defendant's motion to dismiss for insufficient service of process is denied;

3. Defendant's motion to dismiss for improper venue is denied;

4. Defendant's motion to transfer to the District of Connecticut is granted; and

5. Plaintiffs' motion to continue the hearing to conduct further discovery is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

The plaintiffs further note that once they became aware of defendant's claim they were unable to reserve UTC (Delaware) because the Minnesota statute of limitations had run.