**ZUMBRO, INC., Plaintiff,**

v.

**CALIFORNIA NATURAL PRODUCTS,
and Imagine Foods, Inc.,
Defendants.**

Civ. No. 3–93–715.

United States District Court,
D. Minnesota,
Third Division.

Aug. 8, 1994.

Robert T. Edell, Alan W. Kowalchyk, and David K. Tellekson, Merchant, Gould, Edell, Welter & Schmidt, Minneapolis, MN, for plaintiff.

Charlene M. Morrow and David W. Slaby, Fenwick & West, Palo Alto, CA, and Stephen J. Davidson, Leonard, Street & Deinard, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Zumbro, Inc. ("Zumbro") commenced this declaratory judgment, interference with business relationships, and trademark infringement action against defendants California Natural Products ("CNP") and Imagine Foods, Inc. ("Imagine"); it seeks, *inter alia*, a declaration of noninfringement, invalidity, and unenforceability of United States Patent Numbers 4,894,242 ("242 Patent"), 4,744,992 ("992 Patent"), and 4,876,096 ("096 Patent"). Before the Court is the Defendants' Motion, pursuant to Fed.R.Civ.P. 12(b)(2) and (3), and 19, to Dismiss Zumbro's claims against (a) CNP for lack of personal jurisdiction and improper venue, (b) Imagine for improper venue and failure to join an indispensable party.

### Background

*The Parties*

The Defendants are both California corporations that have their principal places of business in California; CNP's is located in Lathrop, California, and Imagine's is located in the San Francisco Bay Area.

Zumbro is a Minnesota corporation; its principal place of business is in Hayfield, Minnesota. Zumbro is principally engaged in manufacturing food ingredient products and selling them to food manufacturers. Its products include rice-based ingredients such as Rice Trin 30 ("Rice Trin") which is a food additive and Rice Beverage Base Dry Mix ("Rice Mix") which is a beverage ingredient.

*The Patents*

The patents at issue in this litigation are (a) the 242 Patent, which describes a "Nutritional Rice Beverage Product," (b) the 992 Patent, which describes the process for manufacturing the products covered by the 242 Patent, and (c) the 096 Patent, which describes rice syrup solids products.[1] CNP and Imagine are co-owners of the 242 Patent

---

1. CNP manufactures two types of rice syrup: (1) a "low conversion" syrup that is used as a source of complex carbohydrates; and (2) a "high con- version" syrup that is used as a sweetener in a variety of products.

and the 992 Patent, whereas CNP is the sole owner of the 096 Patent.

All of the rice beverage bases and pre-mixes CNP makes are covered by the 242 Patent and 992 Patent. Morrow Dec., ¶ 6. All of the rice syrup products CNP promotes and sells are covered by the 096 Patent. *Id.* ¶ 5.

### CNP's Contacts with Minnesota

CNP is not licensed to do business in Minnesota. It has no employees or agents in this state and neither owns nor leases any real or personal property here. It does not advertise in publications that are published in Minnesota; however, it does advertise in nationally distributed food industry journals [2] that are distributed in Minnesota.[3] In addition, CNP's computerized mailing list includes the names of over seventy-five persons and businesses located in Minnesota.[4]

CNP has not sold any rice beverage products covered by the 242 Patent and 992 Patent in Minnesota; however, it does supply rice beverage pre-mix to Imagine, which sells a rice beverage containing that pre-mix in Minnesota. In contrast, CNP has sold products covered by the 096 Patent to seven customers located in Minnesota; two of those customers made one-time-only purchases, and two others purchased on only two occasions. The sales totalled .7% of CNP's total sales revenues. None of those products competes with the rice syrup products Zumbro manufactures and about which CNP and Imagine have been concerned. CNP has also sold products in Minnesota that are not covered by any of the patents at issue.[5]

In addition, CNP has, on two occasions—one in 1991, the other in 1992—sent partially polished brown rice syrup solids (products covered by the 096 Patent) to Marshall Labs in Hopkins, Minnesota, for spray drying and packaging. CNP engaged Marshall Labs' services as a part of selling those rice syrup products to an entity located in New Hampshire. On another occasion, CNP sent Marshall Labs a sample of ultra-high maltose rice syrup (another 096 Patent-related product) in order that Marshall Labs could test its ability to spray dry that product. Hall Dep., at 133.

Finally, CNP has sent to Minnesota literature about, and samples of, products covered by the 096 Patent. In addition, representatives of CNP attended an industry trade convention in Minnesota in the fall of 1992, at which they (a) displayed samples of products covered by the 096 Patent, (b) offered literature concerning those products, and (c) met with representatives of companies located in Minnesota. Hall Dep., at 47–50.

### Letters Concerning the Patents

On May 21, 1991, counsel for CNP sent a letter to IHP, Inc.[6] stating that it believed that certain of the products and production methods IHP, Inc. was utilizing on Zumbro's behalf violated specific patents CNP owned, including the 096 patent. On June 4, 1991, counsel for Zumbro transmitted a response, denying that its manufacturing processes violated any of CNP's patents.

Two years later, on June 11, 1993, counsel for CNP and Imagine sent Zumbro a letter stating that they believed that Zumbro's Rice Trin and Rice Mix, as well as the methods used to produce them, infringed on the 242 Patent, the 992 Patent, and the 096 Patent. The letter demanded that Zumbro respond by June 25, 1993 with written notice that it had "ceased and desisted" from making, us-

---

2. These journals include *Food Technology Magazine, Baking and Snack, Food Processing, Chilton's Food Engineering* and *Chilton's Food Engineering Master.*

3. CNP has obtained inquiries from readers of these trade publications. Although CNP contends that most of the inquiries have resulted from editorials and articles mentioning it and its products, and not from its advertising, the important point for purposes of the instant motion is that CNP advertises in national publications that are distributed in Minnesota.

4. There are over 2,700 names on that list; hence, approximately 3% of the names are located in Minnesota.

5. CNP's total sales in Minnesota over approximately the last nine years total approximately $200,000, which is less than 1% of CNP's total sales revenues.

6. Although the letter was addressed to IHP, Inc., the first paragraph thereof makes clear that it is intended to address actions taken by Zumbro.

ing, or selling the allegedly infringing products.

On June 29, 1993, counsel for CNP and Imagine sent letters to two of Zumbro's customers, Healthco International, located in Bloomingdale, Illinois, and Lipscomb Chemical, located in Long Beach, California. The letters (a) notified the customers of the 242 Patent, 992 Patent, and 096 Patent, (b) stated that CNP and Imagine had informed Zumbro that it likely was infringing the patents, (c) stated that they intended to "aggressively" pursue any infringement of its patents, and (d) informed the customers that federal "patent laws make liable for patent infringement those who make, use or sell a patented invention, practice a patented process, or either induce or contribute to infringement."

### The Litigation

Count I of the Complaint is brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1988); Zumbro seeks an order declaring that (a) the 242 Patent, 992 Patent, and 096 Patent are invalid, or (b) Zumbro's manufacture of Rice Trin and Rice Mix has not infringed any of those patents. In Count II, Zumbro contends that the letters CNP and Imagine sent to its customers in Illinois and California contained false statements that the Defendants knew were false and were sent for the purpose of interfering with Zumbro's business relationships

and prospective business advantage. In Count III, Zumbro alleges that the acts alleged in Count II did, or were likely to, deceive its customers about the fact of patent infringement and violated the Lanham Act, 15 U.S.C. § 1125(a) (1988).

### Discussion

## I. Standards Governing Personal Jurisdiction

Ordinarily, a two-step test is used to determine whether personal jurisdiction may properly be exercised over a non-resident defendant:[7] (1) is the exercise of jurisdiction permitted by the forum state's long-arm statute; and (2) would the exercise of jurisdiction by the courts of the forum state comport with constitutional due process. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir.1991). However, because Minnesota interprets its long-arm statute, Minn.Stat. § 543.19 subd. 1(b) (1992), to extend personal jurisdiction to the fullest extent permitted by due process,[8] see *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn.1992), "the inquiry collapses into a single question of whether exercising personal jurisdiction [in this case] comports with due process." *Bell Paper Box, Inc., v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994); see *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992).[9]

---

7. Because the Defendants' motion was brought on the papers alone, Zumbro can survive it if it makes "a prima facie showing of jurisdiction." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991); see *Aaron Ferer & Sons v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977), and the Court shall look at the facts in the light most favorable to Zumbro and shall resolve all factual disputes in Zumbro's favor. *Bell Paper Box Co. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994); *Dakota Sportswear*, 946 F.2d at 1387.

8. Because Zumbro's claims in Counts I and II are federal claims involving federally-created rights, the Court must examine due process in light of the Fifth Amendment, rather than the Fourteenth Amendment, which applies when a federal court is sitting in diversity. The standards under both amendments, however, are the same. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 n. 2 (8th Cir.1991).

9. CNP contends that the Federal Circuit, in *Beverly Hills Fan Co. v. Royal Sovereign*, 21 F.3d 1558 (Fed.Cir.1994), *pet. for cert.* filed, 62

U.S.L.W. 3844 (June 6, 1994), held that questions of personal jurisdiction in patent cases are governed by the law of the Federal Circuit and not that of the circuit court of appeals for the region in which the dispute is litigated, in this case, the Eighth Circuit. This Court is uncertain whether *Beverly Hills Fan* goes that far, since the decision involved the "stream of commerce" theory of personal jurisdiction, see *id.* at 1564, and all of the court's comments concerning personal jurisdiction focus on the stream of commerce theory, see *e.g., id.* ("[t]he regional circuits have not reached a uniform approach *to this jurisdictional issue*," and "[t]he creation of a uniform body of Federal Circuit law in *this area*") (emphasis added). In any event, CNP's motion to dismiss for lack of personal jurisdiction does not center on the stream of commerce theory; accordingly, as the Court finds that relevant decisions of the Eighth Circuit do not deviate from Federal Circuit caselaw in any material respect, it will apply the analytical method utilized by courts in the Eighth Circuit.

The Court notes, however, that cases from the areas of copyright law and trademark law are

The Due Process Clause requires that a nonresident defendant have sufficient "minimum contacts" with the forum state before the latter may exercise jurisdiction over the former. *Bell Paper*, 22 F.3d at 818. Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and the "reasonable anticipation" requirement is satisfied if the defendant has engaged in " 'some act by which [it] purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)); *see Soo Line R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528–29 (8th Cir.1991). Even where sufficient contacts exist, however, due process still requires that "maintenance of the suit ... not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *see Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

"Specific jurisdiction" over a nonresident defendant is exercised where a court premises jurisdiction over a defendant upon the relationship between the plaintiff's claims and the defendant's forum state activities. *Barkbuster*, 923 F.2d at 1280. Where the plaintiff's claims "arise out of or are connected with the [defendant's] activities within the [forum] state," *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160, the defendant ordinarily should reasonably anticipate being "haled into court" in the forum. "Conversely, when the plaintiff's claims do not relate to the defendant's forum-state activities, jurisdiction is likely to be improper since the defendant 'has no reason to expect to be haled before [the forum state's courts].' " *Barkbuster*, 923 F.2d at 1280 (quoting *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1271 (8th Cir.1978) (citation omitted)).

A court may also exercise jurisdiction over a nonresident defendant who has "continuous and systematic" contacts with the forum state, regardless whether the plaintiff's claim or claims are related to any of those contacts. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 416, 418–19, 104 S.Ct. 1868, 1872–73, 1874–75, 80 L.Ed.2d 404 (1984). Exercising what is known as "general jurisdiction" over a nonresident defendant satisfies due process because a defendant whose contacts with the forum state are systematic and continuous should reasonably anticipate being haled into court there, even where the plaintiff's claims "neither arise out of nor are related to the defendant's contacts with the forum." *Barkbuster*, 923 F.2d at 1280 (citing *Perkins v. Benguet Min. Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)).

Five separate considerations are to be examined when determining whether the exercise of personal jurisdiction in any case comports with due process:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Land–O–Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir.1983); *see also Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 374 (8th Cir.1990). These considerations incorporate the notions of both "minimum contacts" and "fair play and substantial justice." *Sybaritic, Inc.*, 957 F.2d at 524. No one consideration is disposi-

---

relevant to the issues before it. *Beverly Hills Fan* makes clear that it is desirable to harmonize the law of personal jurisdiction in patent infringement cases with the law of copyright and trademark infringement. *Id.* at 1571. There is no reason to suspect that achieving such harmony is any less desirable when the claim is one for declaratory judgment brought by an alleged infringer.

tive,[10] and in every case, the focal relationship is "that among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

CNP[11] asserts that it is not subject to either this Court's specific or general personal jurisdiction on any of Zumbro's claims against it.

## A.   General Jurisdiction

■   As discussed above, CNP may be subject to this Court's general jurisdiction in any case if its contacts with Minnesota are of an amount and degree sufficient to be found "systematic and continuous." The Court has reviewed the facts in the record, assuming the facts asserted by Zumbro to be true and taking all inferences therefrom in its favor; CNP's contacts with Minnesota fall well short of the quantity and quality of contacts which would justify a conclusion that they are "continuous and systematic" as that term has been construed by *Helicopteros* and its progeny. *See e.g., Doula v. United Technologies Corp.*, 759 F.Supp. 1377, 1380–81 (D.Minn.1991). Accordingly, this Court may not exercise general jurisdiction over CNP and the personal jurisdiction question at issue reduces itself to whether this Court may exercise specific jurisdiction over CNP. Because specific jurisdiction requires a nexus between the defendant's contacts with the forum state and the subject matter of Zumbro's claims in this litigation, it is necessary to address each of Zumbro's claims individually. *See Barkbuster*, 923 F.2d at 1281–82 (defendant's contacts with forum arising from contract for sale of product line disregarded

when plaintiff's claim against the defendant related to negligent design of product).

## B.   Specific Jurisdiction

### 1.   Patent Claims

■   Zumbro's patent claims in Count I seek relief in the form of an order declaring that (a) Rice Trin and Rice Mix do not infringe on the 992 Patent, 242 Patent, or 096 Patent, and (b) those patents are invalid, void, and unenforceable. Consequently, the subject matter of the declaratory judgment claims in Count I are the patents themselves, and the critical relationship under *Shaffer* and its progeny is that among CNP, Minnesota, and the patents that have been challenged. *Land–O–Nod*, 708 F.2d at 1342. With this relationship in mind, the Court turns to the *Land–O–Nod* factors.

### a.   quantity

■   The quantity of CNP's contacts with Minnesota, while not minuscule, are not substantial.[12] CNP's employees have been physically present in Minnesota on only one occasion, it has made a few, isolated sales of its products to customers located in Minnesota (the dollar amount of which is not compelling in light of CNP's total sales), it has on three occasions engaged a company located in Minnesota to process certain products, it has solicited sales of products by (a) advertising in national trade journals that are distributed in Minnesota, and (b) responding to inquiries about its products by sending information and/or product samples to persons and entities located in Minnesota. In addition, CNP has sent Zumbro two letters concerning its patents and Zumbro's potentially infringing products.

10.   The first three factors are of increased importance vis-a-vis the fourth and fifth factors. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977).

11.   Imagine has not challenged this Court's personal jurisdiction over it.

12.   Zumbro asserts that Imagine's contacts with Minnesota should be attributed to CNP and their forum contacts aggregated simply because of the business relationship between CNP and Imagine, particularly that CNP is Imagine's sole supplier of rice beverage pre-mix covered by the 992 Patent and 242 Patent and that Imagine is CNP's

only customer for that product. The Court rejects that assertion for two reasons. First, the Supreme Court in *Rush v. Savchuk*, 444 U.S. 320, 331–32, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980), generally disapproved of aggregating contacts as being "plainly unconstitutional," *id.* at 332, 100 S.Ct. at 579; Zumbro has not demonstrated that aggregating contacts nonetheless is appropriate here. Second, to the extent that Zumbro is relying on the "stream of commerce" theory to tie CNP to Imagine, that theory is inapplicable to this case for the reasons stated in *Ryobi America Corp. v. Peters*, 815 F.Supp. 172, 176–77 (D.S.C.1993).

#### b. nature and quality

The nature and quality of those contacts all reflect the reality that CNP has attempted and is still attempting to develop its business in Minnesota in a purposeful manner; however, its contacts with Minnesota have been inconsistent and somewhat attenuated. CNP does not maintain any physical presence in Minnesota, does not employee an agent in or for Minnesota, and owns no property and holds no accounts in Minnesota. In addition, CNP's one physical contact with Minnesota, the 1992 industry convention, was, at best, fortuitous; its employees came to Minnesota only because that is where the national trade convention was held that year. Nevertheless, CNP's promotion and sale of products in Minnesota, both of rice syrup products covered by the 096 Patent and others products not covered by any of the patents at issue, constitutes "voluntary, affirmative, economic activity" of some substance, *see Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965), all of which was protected by Minnesota law.

#### c. relationship

The relationship between CNP's contacts with Minnesota and Zumbro's declaratory judgment claim in Count I is not nonexistent, tangential. As discussed above, the subject matter of the claims asserted in Count I are the patents themselves and the material questions raised in Count I are whether (a) the patents are valid, and (b) if so, whether Zumbro infringed them. Consequently, Zumbro's claims in Count I neither arise out of nor relate to the activities in which CNP has engaged in order to exploit those patents, including producing and promoting products covered by the patents,[13] *see Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th

Cir.1993); indeed, Zumbro claims no injury flowing from CNP's production, marketing, and sale of its products. Accordingly, there does not appear to be any nexus between CNP's marketing and sale of its products in Minnesota and the subject matter of Zumbro's claims in Count I, which concern only the patents' validity and Zumbro's own actions; CNP's contacts with Minnesota likewise are not related to the "operative facts" of Zumbro's patent claims. *See Rush v. Savchuk*, 444 U.S. 320, 329, 100 S.Ct. 571, 578, 62 L.Ed.2d 516 (1980); *Ham*, 4 F.3d at 416; *Barkbuster*, 923 F.2d at 1282; *Database America, Inc. v. Bellsouth Advertising & Pub. Corp.*, 825 F.Supp. 1195, 1214 (D.N.J. 1993); *Ryobi America Corp. v. Peters*, 815 F.Supp. 172, 176 (D.S.C.1993); *KVH Indus. Inc. v. Moore*, 789 F.Supp. 69, 71–72 (D.R.I. 1992); *International Communications, Inc. v. Rates Technology, Inc.*, 694 F.Supp. 1347, 1352 (E.D.Wis.1988).

The Court also concludes that CNP's acts of sending the two letters to Zumbro are unrelated to the subject matter of Zumbro's declaratory judgment claims in Count I. *See Unistrut Corp. v. Baldwin*, 815 F.Supp. 1025, 1027 (E.D.Mich.1993); *BIB Mfg. Co. v. Dover Mfg. Co.*, 804 F.Supp. 1129, 1133 (E.D.Mo. 1992); *KVH Indus.*, 789 F.Supp. at 71. Although an infringement letter might "give rise" to a declaratory judgment action such as that alleged in Count I, it does so only in the sense that receiving such a letter may create a controversy motivating the accused infringer to commence an action to declare its rights. Such letters have no bearing on, i.e., are unrelated to, the subject matter of the subsequent claim: is the patent valid and, if so, have the plaintiff's acts infringed it.[14] *See Amway Corp. v. Kope Food Products*, 840 F.Supp. 78, 81 (W.D.Mich.1993);

---

**13.** Promoting and selling products *not* covered by any of the patents at issue are acts *unrelated* to the subject matter of Zumbro's patent claims. *See Land–O–Nod*, 708 F.2d at 1341.

**14.** The Court acknowledges that other, earlier, decisions from courts of this District hold that where the purpose of such a letter is to deter a Minnesota corporation from producing products that violate the federal patent laws, a sufficient nexus is shown between the defendant's forum-related contacts and the subject of the claim or claims at issue. *See Cardiac Pacemakers, Inc. v.*

*Coratomic, Inc.*, 201 U.S.P.Q. 679, 681 (D.Minn. 1979); *Medtronic, Inc. v. Mine Safety Appliances Co.*, 468 F.Supp. 1132, 1147 (D.Minn.1979); *Dyform Concrete, Ltd. v. Spiroll, Ltd.*, 370 F.Supp. 290, 292 (D.Minn.1973); *Imperial Prod., Inc. v. Zuro*, 176 U.S.P.Q. 172, 176 (D.Minn.1971). The Court finds that the rule adopted herein is more in line with federal patent law and the evolving law of personal jurisdiction. *See Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182; *Rush*, 444 U.S. at 329, 100 S.Ct. at 578; *Land–O–Nod*, 708 F.2d at 1342–43 (citing cases).

*BIB Mfg.*, 804 F.Supp. at 1133; *KVH Indus.*, 789 F.Supp. at 71. In addition, CNP's act of sending an infringement letter to Zumbro was an exercise of its rights under federal patent laws;[15] doing so should not subject it to suit in any forum wherein it finds a party allegedly infringing its patents.[16] *See BIB Mfg.*, 804 F.Supp. at 1133; *International Communications, Inc. v. Rates Technology, Inc.*, 694 F.Supp. 1347, 1352 (E.D.Wis.1988).

Finally, the infringement letters combined with the quantum of *unrelated* contacts CNP has had with Minnesota does not support the exercise of specific jurisdiction over CNP by a Minnesota court. Although Zumbro relies on *B & J Mfg. Co. v. Solar Indus., Inc.*, 483 F.2d 594 (8th Cir.1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974), as authority for asserting that unrelated contacts can be the basis of exercising personal jurisdiction over a nonresident defendant in a declaratory judgment action, the Eighth Circuit, in *Land–O–Nod*, excavated and hauled away nearly all, if not all, of the foundation for the holding in *B & J*:

> To the extent that the court in *B & J* addressed the issue of due process, it concluded that "the quality, quantity and nature of the defendant's contacts with the jurisdiction are substantial" and therefore due process was satisfied. The court did not specifically discuss in its due process analysis the relationship of the cause of action to the forum. *Shaffer v. Heitner* and the other Supreme Court cases decided after *B & J* make clear that some nexus between the forum and the subject matter of the litigation is required to satisfy due process.

708 F.2d at 1342–43 (internal citations omitted).[17]

CNP's *ownership* of the patents in question is not in any way related to CNP's contacts with Minnesota. *See Ryobi America Corp. v. Peters*, 815 F.Supp. 172, 176 (D.S.C.1993); *KVH Indus., Inc. v. Moore*, 789 F.Supp. 69, 71–72 (D.R.I.1992). Because there is scant, if any, relation between the subject matter of Zumbro's patent claims in Count I and CNP's contacts with this forum, a balancing of the *Land–O–Nod* factors[18] does not support a determination that this Court may exercise specific personal jurisdiction over CNP on Zumbro's patent claims in Count I. Accordingly, those claims will be dismissed as against CNP.

## 2. Interference with Business Relations

In Count II, Zumbro alleges that CNP and Imagine tortiously interfered with its valid business relationships, prospective economic advantage, and other economic expectancy when it sent the letters dated June 29, 1993 to its two customers. CNP contends that because neither of the letters was sent to a customer located in Minnesota, this Court may not exercise specific jurisdiction over it. (Mem.Supp.Mot. to Dismiss, at 12–13 (citing *Hicklin Engineering, Inc. v. Aidco, Inc.*, 959

**15.** The Court rejects the notion that an infringement letter, when sent to an alleged infringer that is also a competitor, is merely an anticompetitive business action constituting a forum contact related to a subsequent declaratory judgment action, and not the exercise of a right (and obligation) established by the federal patent laws. *Cf. Tol–O–Matic, Inc. v. Proma Produkt–Und Mktg. Gesellschaft, m.b.H.*, 690 F.Supp. 798, 800 (D.Minn.1987); *Cardiac Pacemakers*, 201 U.S.P.Q. at 681. Every patent holder seeks to dampen competition created by an alleged infringer, whether that competition affects the sales the patent holder's own products or those of its licensees (and thereby the value of the licenses themselves).

**16.** Even if the letters were related to the patent claims in Count I, Zumbro has not cited, and the Court has not found, a single decision holding that the sending of a letter such as those CNP sent to Zumbro *alone* is sufficient to warrant the exercise of personal jurisdiction. Numerous decisions establish the contrary proposition. *See e.g., Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 196–97 (1st Cir.1980); *BIB Mfg.*, 804 F.Supp. at 1133; *KVH Indus.*, 789 F.Supp. at 72–73 (citing cases).

**17.** Even if CNP's promotion and sale in Minnesota of products covered by the 096 Patent were deemed "related" to the subject matter of the claims in Count I, they would be too few to permit the exercise of personal jurisdiction over CNP in accordance with "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160); *see Dakota Sportswear*, 946 F.2d at 1389–90.

**18.** Consideration of the less significant fourth and fifth factors in *Land–O–Nod* does not alter the Court's conclusion.

F.2d 738, 739 (8th Cir.1992) (per curiam), and *Keystone Pub. Serv., Inc. v. Ross,* 747 F.2d 1233, 1234 (8th Cir.1984) (per curiam)).) Zumbro responds that *Hicklin* and *Keystone* are distinguishable because neither case involved "assertions of patent infringement against alleged infringers and/or customers or use of patents to interfere with a competitors business." (Mem.Opp'n Mot. to Dismiss, at 28.) Zumbro further responds that CNP is subject to general jurisdiction; thus, it is immaterial that the letters were not published in Minnesota.

■ The parties' citations to *Hicklin* and *Keystone* indicate that they are applying the so-called "effects test" for personal jurisdiction. *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984). This test, which generally has been limited to intentional torts—*Calder* involved claims of libel against a reporter and editor of the National Enquirer—provides that a nonresident defendant whose intentional acts "are performed for the very purpose of having their consequences felt in the forum state" may be subjected to that forum's personal jurisdiction since it knows that the major impact of the injury may be felt in the forum state and should, therefore, reasonably anticipate being haled into court in that state. *Id* at 789–90, 104 S.Ct. at 1487.[19]

Two decisions indicate how the Eighth Circuit has delimited the effects test discussed in *Calder.* In *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384 (8th Cir. 1991), the court relied on the effects test to reverse the district court's holding that a South Dakota court could not exercise personal jurisdiction over the nonresident defendant in a trademark infringement suit. *Id.* at 1391. In reaching its decision, the court recognized that the facts before it did not clearly render the effects test applicable;

nevertheless, it reasoned that the plaintiff had supplied facts indicating that the defendant (a) knowingly and intentionally infringed its trademark, and (b) shipped products incorporating the infringing mark into South Dakota, the plaintiff's principal place of business. Given these facts, the court reasoned, the plaintiff had shown that the defendant's actions were "uniquely aimed at the forum state" and that "the brunt of the injury" would be felt there, *id.* at 1391; under *Calder,* the defendant "must 'reasonably anticipate being haled into court'" in South Dakota. *Id.* (quoting *Calder,* 465 U.S. at 790, 104 S.Ct. at 1487).

In *Hicklin,* the court declined the plaintiff's invitation to apply the effects test to claims of interference with prospective business advantage, interference with contractual relations, and libel, all of which arose from the nonresident defendant's act of mailing, to plaintiff's customers, letters containing allegedly defamatory statements about the plaintiff's products.[20] 959 F.2d at 739. In affirming the district court's rejection of the effects test, the *Hicklin* court reasoned that *Calder* was inapposite because (1) none of the letters was published in Iowa, the forum state, and (2) there was no evidence that the defendant's actions were "targeted" to have an effect in Iowa. *Id.* The Court concluded that although promoting and soliciting products may have an economic effect on a competitor, that effect alone was not enough to warrant the exercise of personal jurisdiction. *Id.*

■ *Hicklin* and *Dakota Sportswear* illustrate that the effects of a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were "uniquely"

---

**19.** In determining that the exercise of jurisdiction was proper, the Supreme Court in *Calder* relied upon the defendants' knowledge that (1) the article would have a "potentially devastating impact" on the plaintiff, and (2) the "brunt" of the injury would be felt in California, where the plaintiff worked and lived and where the National Enquirer had its largest circulation. *Id.,* 465 U.S. at 789, 104 S.Ct. at 1487. In sum, the Court determined that California was the focal point of both the allegedly libelous story and the

harm suffered. *Id.* at 789, 104 S.Ct. at 1486. Under such circumstances, the defendants must have "reasonably anticipate[d] being haled into court" in California. *Id.* at 790, 104 S.Ct. at 1487.

**20.** Because *Hicklin* involved two competing corporations, 959 F.2d at 739, Zumbro incorrectly asserts that it is distinguishable from the case at bar.

or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—there. *See Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir.1993). Assuming Zumbro's allegations to be true, CNP interfered with Zumbro's business when it sent two of Zumbro's customers correspondence falsely accusing it of patent infringement and insinuating, falsely, that those customers could be liable for that infringement. These facts are a prima facie showing that CNP's acts were intentional and that those acts caused Zumbro to suffer economic harm, but Zumbro has not made a similar showing that CNP's actions were uniquely or expressly aimed at Minnesota—the two letters at issue were not published here—or that the brunt of the harm was suffered in Minnesota,[21] much less that CNP knew it would be suffered there. *Hicklin* makes clear that an injurious effect on Zumbro's business alone is not enough to exercise jurisdiction over CNP under the effects test.[22] *Cf. Lex Computer & Mgmt. v. Eslinger & Pelton, P.C.*, 676 F.Supp. 399, 405 (D.N.H.1987) (fact that defendant's employee stated that infringement letters were sent to customers to get alleged infringer's "attention" showed that defendant recognized that its letters would have an impact on the alleged infringer). Because Zumbro has not otherwise established a prima facie case that this Court may exercise personal jurisdiction over CNP on Zumbro's claim in Count II, it will be dismissed as against CNP.[23]

### 3. Lanham Act Claim

In Count III, Zumbro alleges that CNP and Imagine violated the Lanham Act, 15 U.S.C. § 1125(a) by making false representations that Rice Trin and Rice Mix infringe on the patents at issue in this case. Zumbro further alleges that those false statements have deceived or are likely to deceive a substantial number of its customers and have diverted past and future sales away from it.

For the same reasons that this Court may not exercise personal jurisdiction over CNP on Zumbro's claim in Count II, it may not exercise personal jurisdiction over CNP on Zumbro's Lanham Act claim in Count III. Accordingly, Count III will also be dismissed as to CNP.

### II. Indispensable Party

■ Imagine seeks to have Zumbro's claims against it dismissed in the event that CNP is not subject to this Court's personal jurisdiction; it argues that a patent owner is an indispensable party to a suit challenging the patent's validity and enforcement. Zumbro has not asserted that Imagine's position is without merit, nor could it. The Court agrees with decisions by courts in this District and other districts that a patent holder—even one who holds a patent with another party—is an indispensable party in a declaratory judgment action challenging a patent's validity and enforcement. *See Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F.Supp. 1352, 1375 (D.Del.1993); *Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft, m.b.H.*, 690 F.Supp. 798, 801 (D.Minn.1987); *Suprex Corp. v. Lee Scientific Inc.*, 660 F.Supp. 89, 93–94 (W.D.Pa.1987); *Messerschmitt–Boelkow–Blohm gmbH v. Hughes Aircraft Co.*, 483 F.Supp. 49, 52–53 (S.D.N.Y.1979). The Court therefore will dismiss Zumbro's patent claims against Imagine in Count I.

The Defendants' motion papers and initial memorandum baldly assert that "each cause of action against Imagine should be dismissed because the action cannot proceed without [CNP], who is an indispensable party," (Mem.Supp.Mot. to Dismiss, at 13); how-

---

**21.** It is not clear whether Zumbro would suffer the brunt of the harm in its home state or where its business was affected most significantly. Zumbro does not allege that this affect was felt most significantly in Minnesota.

**22.** The record in this case is substantially similar to that in *BIB Mfg. Co. v. Dover Mfg. Co.*, 804 F.Supp. 1129 (E.D.Mo.1992), wherein the court found that the defendant's act of sending a copy

of an infringement letter to a California customer of the plaintiff did not render the defendant subject to personal jurisdiction on a claim of tortious interference with a business relationship. *Id.* at 1133 (citing *Keystone,* 747 F.2d at 1234).

**23.** For the reasons stated above, *see supra* Part I.A, CNP is not subject to this Court's general jurisdiction on Count II.

ever, they have failed to offer *any* reason or authority for concluding that CNP is an indispensable party to Counts II and III (their memoranda wholly focus on Count I). Accordingly, Imagine's motion to dismiss those counts under Rule 19 will be denied.

### III. Improper Venue

In prior sections of this Memorandum Opinion, the Court dismissed Zumbro's claims (a) in Count I as to both CNP and Imagine, and (b) in Counts II and III as to CNP. Consequently, the only claims remaining in this litigation are Zumbro's claims against Imagine in Counts II and III.

■■■ As was the case with the portion of their arguments relating to Rule 19, *see supra*, Part II, the Defendants have not devoted any arguments to the question whether this forum is an appropriate venue for Zumbro's claims against Imagine in Counts II and III. Given that Imagine has waived any objections to this Court's exercise of personal jurisdiction, *Dakota Sportswear* supports the conclusion that this forum is also a proper venue under 28 U.S.C. § 1391(b). 946 F.2d at 1392. In any event, Imagine has not provided the Court with any reasons to doubt that it is a proper venue. Accordingly, the Court will deny Imagine's Rule 12(b)(3) motion to dismiss Counts II and III.

### Conclusion

Based upon the foregoing, and the records, files, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that defendants California Natural Products' and Imagine Foods, Inc.'s Motion to Dismiss (Doc. No. 22) is **GRANTED** as to (a) plaintiff Zumbro, Inc.'s claims in Count I, and (b) Zumbro's claims against CNP in Counts II and III, and is, in all other respects, **DENIED.** Zumbro's claims against the Defendants in Count I, and its claims against CNP in Counts II and III, are **DISMISSED WITHOUT PREJUDICE.**